# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| JESS RAVICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-10-005 SKR |
| | ) | |
| TCW, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

*Upon Consideration of Defendant's Motion to Dismiss:*

## GRANTED.

Brian E. Farnan, Esquire, and Michael J. Farnan, Esquire, FARNAN LLP, Wilmington, Delaware, and Thomas A. Clare, P.C., Esquire, and Jered T. Ede, Esquire, CLARE LOCKE LLP, Alexandria, Virginia, *Attorneys for Plaintiff Jess Ravich*.

Rudolf Koch, Esquire, and Sara M. Metzler, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, and John C. Hueston, Esquire, Alison L. Plessman, Esquire, Samantha Fidler, Esquire, Adam Minchew, Esquire, and Nicholas Kellum, Esquire, HUESTON HENNIGAN LLP, Los Angeles, California, and New York, New York, *Attorneys for Defendant TCW, LLC*.

**RENNIE, J.**

# INTRODUCTION

This memorandum opinion considers and grants Defendant TCW, LLC ("TCW")'s motion to dismiss the complaint.[1] In the underlying defamation action, Plaintiff Jess Ravich ("Ravich")[2] alleges that his former employer, global asset management firm TCW, intentionally damaged his reputation. The head of marketing at TCW released a confidential internal memorandum to reporters at various news publications. In the memorandum, the chief executive officer of TCW stated that Ravich had engaged in unprofessional communications with a coworker. Some of the contacted reporters subsequently published news articles based on this memorandum.[3]

## FACTUAL OVERVIEW[4]

In late 2010, Ravich met Sara Tirschwell ("Tirschwell"), his future TCW colleague, at an industry event. Approximately two years later, between May 2012 and December 2012, Ravich and Tirschwell began a fifteen-month romantic relationship.

In December 2012, Ravich began his term of employment with TCW. Around this time, Ravich told David Lippman ("Lippman"), the chief executive officer of

---

[1] TCW is a Delaware limited liability company with a principal place of business in California. Compl.

[2] Ravich is an individual. Compl.

[3] Compl.

[4] These facts are largely drawn from Ravich's complaint in this case.

TCW, about his romantic relationship with Tirschwell. In late 2013, Ravich and Tirschwell ended their romantic relationship.

On July 31, 2014, Ravich and TCW entered into an amended employment agreement (the "Employment Agreement"), which provided that Ravich would work for TCW until December 31, 2019, unless his term of employment was otherwise terminated or extended.[5]

In March 2016, TCW hired Tirschwell to oversee a distressed fund program. Ravich alleges that Lippman discussed Ravich and Tirschwell's prior romantic relationship with each of them prior to this hiring.

In the fall of 2016, TCW modified the terms of Tirschwell's employment. TCW and Tirschwell entered into a term employment contract that was scheduled to end in February 2017. Later in 2016, TCW agreed to extend Tirschwell's term of employment to February 2018.

On December 1, 2017, TCW Owners LLC (the "LLC"), a limited liability company affiliated with TCW, amended its LLC Agreement (the "LLC Agreement") to add Ravich as a member and manager.[6]

On December 5, 2017, Tirschwell raised a sexual harassment complaint against Ravich with TCW. Ravich asserts that TCW conducted an internal

---

[5] Def. TCW LLC's Opening Br. Supp. Mot. to Dismiss Compl. Ex. A [hereinafter "Employment Agreement"].
[6] Aff. Jess Ravich Ex. D [hereinafter "LLC Agreement"].

investigation of Tirschwell's allegations and, within a few days afterwards, found that they lacked merit. On December 14, 2017, TCW terminated Tirschwell's employment. On December 15, 2017, TCW contracted with an outside workplace investigator ("Investigator") to conduct an investigation of Tirschwell's sexual harassment allegations.

In December 2017, Lippman appointed Ravich to the board of directors of TCW and the LLC.

In January 2018, Tirschwell filed suit against TCW, Lippman, and Ravich for gender discrimination and retaliation.

On August 29, 2018, Investigator presented a verbal interim report to TCW's board of directors on the investigation into Tirschwell's sexual harassment allegations. Investigator stated that Ravich had held business meetings with Tirschwell at his apartment and over breakfast during her tenure with TCW. Investigator noted that the investigation had produced insufficient information to support a finding that the sexual harassment incidents alleged by Tirschwell had occurred. Nonetheless, Investigator found that Ravich and Tirschwell had exchanged flirtatious, personal text messages. In one message, Ravich offered to pick up Tirschwell from the airport. In another, he signed off his message with "Love u."[7]

---

[7] *See* Def. TCW LLC's Opening Br. Supp. Mot. to Dismiss Compl. Ex. B.

By August 31, 2018, TCW had drafted an internal memorandum to employees which described the disciplinary measures to be pursued against Ravich based on Investigator's report. Over the following weeks, TCW revised this draft. By October 4, 2018, three investigations into Ravich's conduct had occurred, and Ravich had resigned from TCW's board of directors.

On October 4, 2018, Lippman sent TCW employees a confidential internal memorandum (the "Memo"). In the Memo, Lippman described the complaint filed by Tirschwell, explained that he and TCW denied her allegations, and stated that TCW had hired a law firm to investigate the facts. Lippman noted that TCW had learned about "unprofessional communications" between Ravich and Tirschwell, based on which TCW would be taking disciplinary measures against Ravich. Lippman stated that Ravich had been on leave from the board of directors of TCW, then had resigned. Lippman concluded the Memo by stating that TCW does not tolerate harassment or discrimination and that employees should treat communications on the matters referenced in the Memo with confidentiality.[8]

Later that day, TCW's head of marketing and communications emailed copies of the Memo to reporters from *The New York Times*, *Bloomberg*, and the *Wall Street Journal*.[9] Within a few hours afterwards, the *Bloomberg* reporter published an

---

[8] Compl. Ex. 1.
[9] Compl. Ex. 1, 2, 4.

article based on the Memo. On October 5, 2018, *Bloomberg* published an updated version of another article to add Ravich's name to a list of high-profile individuals who had been accused of sexual misconduct.

On September 7, 2018, a law firm retained by TCW shared a report based on the firm's independent investigation of Tirschwell's allegations against Ravich.[10] On March 15, 2019, the chairman of TCW's board of directors, Marc Stern ("Stern"), met with Ravich. Stern told Ravich that if Ravich did not pay to settle the sexual harassment litigation, TCW would terminate his employment.

On March 16, 2019, *The New York Times* published an article that described Tirschwell's sexual harassment allegations against Ravich. On March 21, 2019, Stern told Ravich that TCW had located emails which created an appearance that Ravich and Tirschwell had dated while Ravich's now-deceased wife was alive. Stern repeated his instruction that Ravich must settle the sexual harassment litigation from his own funds or face firing. Ravich did not pay to settle the sexual harassment litigation.

On June 10, 2019, TCW terminated Ravich's employment. At the time of termination, Ravich served as Group Managing Director and Head of Alternative Products at TCW. On June 12, 2019, *Reuters* published an article that described

---

[10] Def. TCW LLC's Opening Br. Supp. Mot. to Dismiss Compl. Ex. C.

Ravich's 2018 resignation from TCW's board of directors. The article was based in part on the *Reuters* reporter's review of the Memo.

**PROCEDURAL HISTORY**

On October 1, 2023, Ravich filed suit in this Court against TCW for defamation. Ravich alleges that TCW intentionally defamed him by publishing the Memo to TCW employees and by sharing the Memo with reporters. Ravich states that the content of the Memo is false, defamatory, and has inflicted reputational harm upon him. Ravich seeks compensatory and punitive damages, including $60,000,000 in lost income and $2,000,000 in expenses that he incurred while attempting to rehabilitate his reputation.[11]

On November 27, 2023, TCW filed a motion to dismiss Ravich's complaint pursuant to Superior Court Civil Rules 12(b)(3) and 12(b)(6) (the "Motion"). TCW asserts that Ravich's claim should be dismissed because (1) this Court is an improper venue due to a forum selection clause in the Employment Agreement and (2) Ravich has failed to state a legal claim for defamation.[12] On December 22, 2023, Ravich filed a brief in opposition to the Motion.[13] On January 12, 2024, TCW filed a reply brief in support of the Motion.[14]

---

[11] Compl.
[12] Def. TCW LLC's Opening Br. Supp. Mot. to Dismiss Compl. [hereinafter "Opening Br."].
[13] Pl.'s Br. Opp'n Def.'s R. 12(B)(6) Mot. to Dismiss [hereinafter "Opp'n Br."].
[14] Def. TCW LLC's Reply Br. Supp. Mot. to Dismiss Compl. [hereinafter "Reply Br."].

On January 23, 2024, the Court heard argument on the Motion.

## LEGAL ANALYSIS

Superior Court Civil Rule 12(b)(3) governs a motion to dismiss for improper venue. A motion to dismiss tests the sufficiency of the complaint, rather than resolving any disputed issues of material fact or deciding the case on the merits. In reviewing the motion, the Court "must assume as true all the facts pled in the complaint and view those facts and all reasonable inferences drawn up from them in the light most favorable to the plaintiff."[15] The Court can consider extrinsic evidence in this analysis.[16]

TCW contends that the complaint should be dismissed for improper venue pursuant to Rule 12(b)(3) because the parties agreed to a mandatory New York forum selection clause in the Employment Agreement. TCW maintains that this agreement and clause apply to the instant action.[17] Ravich responds that the Employment Agreement does not apply here. Indeed, Ravich asserts that his defamation claim does not depend on the existence of any contractual relationship— employment-based or otherwise—between TCW and Ravich. As an alternative, Ravich argues that if his claim were based on any contract, it would be the LLC

---

[15] *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. Mar. 31, 2009).
[16] *Id.* Because Rule 12(b)(3) is dispositive in this case, the Court does not reach the parties' arguments based on Rule 12(b)(6).
[17] Opening Br.; Reply Br.

Agreement, because the Memo announced Ravich's resignation from the board of directors of the LLC. And Ravich argues that adhering to the forum selection clause in the LLC Agreement would allow his action to proceed in this Court.[18]

Delaware courts routinely defer to forum selection clauses in order to "give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation."[19] Accordingly, Delaware courts presume that freely negotiated forum selection clauses are *prima facie* valid and specifically enforce them "unless the resisting party clearly shows that enforcement would be unreasonable or unjust, or that the clause is invalid for reasons such as fraud or overreaching."[20]

In Delaware, "[f]orum selection clauses can be applied not only to contract-based claims but also tort claims arising out of, or depending upon, the contractual relationship in question."[21] A forum selection clause encompasses tort claims when the tort claims "ultimately depend on the existence of a contractual relationship between the parties," when "resolution of the claims relates to an interpretation of the contract," or when "the tort claims involve the same operative facts as a parallel

---

[18] Opp'n Br.

[19] *BACO Holdings, Inc. v. Arria Data2Text, Ltd.*, 2023 WL 2199871, at *2 (Del. Super. Feb. 24, 2023) (quoting *Plaze, Inc. v. Callas*, 2019 WL 1028110, at *3 (Del. Ch. Feb. 28, 2019)); *see Cargill, Inc. v. Rossi*, 2023 WL 6812881, at *3 (Del. Super. Oct. 16, 2023).

[20] *BACO Holdings*, 2023 WL 2199871, at *2.

[21] *EnVen Energy Corp. v. Dunwoody*, 2020 WL 2770609, at *3 (Del. Ch. May 28, 2020).

9

claim for breach of contract."[22]  "Tort claims related to a contractual relationship frequently require a determination of the contract's scope and of how the rights and duties created by that contract interact with the parties' general tort duties— questions that are typically freighted with public policy concerns."[23]

In determining which contract, if any, governs this dispute, the Court "must consider the entire collection of related contracts."[24]  Here, the Court will consider the provisions of the LLC Agreement first, then those of the Employment Agreement.

## A. LLC Agreement

Ravich argues that because the Memo announced his resignation from the board of directors of the LLC, the forum selection clause in the LLC Agreement applies to this action, rather than the clause in the Employment Agreement.  Ravich asserts that this Court is the proper venue for the action based on the LLC Agreement's forum selection clause.[25]  TCW responds that Ravich's claim does not arise out of the LLC Agreement.  In TCW's view, Ravich has failed to establish that

---

[22] *Bakotic v. Bako Pathology LP*, 2018 WL 6601172, at *7 (Del. Super. Dec. 10, 2018) (quoting *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000)). Further, a forum selection clause "should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship." *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1252 (Del. Ch. 2010).
[23] *Ashall Homes*, 992 A.2d 1239 at 1252.
[24] *Ingres Corp. v. CA Inc.*, 8 A.3d 1143, 1146 (Del. 2010).
[25] Opp'n Br.

the provisions of the LLC Agreement should take priority over those of the Employment Agreement for forum selection purposes.[26]

The LLC Agreement provides that the exclusive jurisdiction for proceedings that arise from, relate to, or connect to the LLC Agreement is the Delaware Court of Chancery, or else the United States District Court for the District of Delaware, but not this Court. The clause reads, in pertinent part, as follows:

> Each Member irrevocably submits to the exclusive jurisdiction of the Chancery Court of the State of Delaware located in Wilmington, Delaware (or, if the Chancery Court of the State of Delaware declines to accept jurisdiction over a particular matter, the United States District Court for the District of Delaware) and appellate courts thereof, for purposes of any suit, action or other proceeding arising out of, related to or in connection with this Agreement.[27]

Ravich's defamation claim in this case does not arise from, relate to, or connect to the LLC Agreement. Ravich's contractual relationship with the LLC, and the subsequent conclusion of that relationship by his resignation from its board of directors, is only marginally relevant to his defamation claim. Ravich raises his defamation claim against TCW, not the LLC. The LLC is not a party to this action.

---

[26] Reply Br.

[27] LLC Agreement § 11.1(b). Further, each Member of the LLC "irrevocably and unconditionally waives any objection to the laying of venue of any suit, action or other proceeding in the Chancery Court of the State of Delaware located in Wilmington, Delaware (or, if the Chancery Court of the State of Delaware declines to accept jurisdiction over a particular matter, the United States District Court for the District of Delaware) and appellate courts thereof, and hereby and thereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any dispute brought in any such court has been brought in an inconvenient forum." *Id.*

11

Ravich hardly even mentions the LLC in his complaint, except to state that he was appointed to the board of the LLC in 2017. It is in Ravich's brief in opposition to TCW's motion to dismiss that he directly addresses for the first time the notion that the Memo announced his resignation from the board of directors of the LLC.[28] It can hardly be said that Ravich's resignation from the LLC was the impetus behind his defamation claim. That statement was simply a fact in the sequence of events that resulted from the informal investigation commissioned by his employer, TCW. The mere reference in the Memo to Ravich's resignation from the LLC is insufficient to establish that his defamation claim arises from, relates to, or connects to the LLC Agreement, such that it would trigger the LLC Agreement's forum selection clause.

Even if the Court assumed, *arguendo*, that Ravich's defamation claim arose from the LLC Agreement, enforcement of the forum selection clause from the LLC Agreement would still require dismissal of this action for improper venue. Despite the parties' description of this clause as a "Delaware forum selection clause," this Court—the Delaware Superior Court—falls outside the venue framework set out in the clause. The clause expressly and clearly states that Ravich must file any claims based on the LLC Agreement in the Delaware Court of Chancery, or if the Court of

---

[28] Ravich attached a copy of the Memo as an exhibit to the complaint. The Memo notes that Ravich had resigned from TCW's board of directors, but it does not specify whether this refers to TCW or the LLC. And the complaint only directly mentions Ravich's resignation from the board of the TCW, not from the board of the LLC.

Chancery lacks jurisdiction, in the United States District Court for the District of Delaware. Glaringly absent from this provision is any language by which the parties contractually consent to the venue of the Delaware Superior Court.[29] Hence, Ravich's argument that the LLC Agreement's forum selection clause allows this action to proceed in this Court is unavailing.

## B. Employment Agreement

The Employment Agreement between TCW and Ravich provides for a New York forum for an action or proceeding that "aris[es] out of the employment relationship" between them.[30] The forum selection clause reads as follows:

> Unless otherwise provided for in the Transaction Documents, each of the parties hereto hereby irrevocably submits to the exclusive jurisdiction of the United States District Court in the Southern District of New York, or in the event such court lacks jurisdiction, in the Supreme Court of the State of New York sitting in New York County, over any action or proceeding arising out of the employment relationship between them, and each party hereby irrevocably agrees that all claims in respect of such action or proceeding may be held and determined in such court.[31]

Based on this clause, the threshold question to determine the applicability of the Employment Agreement is whether Ravich's defamation claim arises from the

---

[29] *See Cargill, Inc. v. Rossi*, 2023 WL 6812881, at *3 (Del. Super. Oct. 16, 2023) ("[T]he forum selection clauses of the Agreements and Plans that Rossi signed specify narrowly that he consents to the personal jurisdiction of the Court of Chancery, not Delaware courts in general or this Court. Interpreting this provision contrary to what it says would contravene the parties' intentions and their bargained-for arrangement.").

[30] Employment Agreement. § 12.

[31] *Id.*

employment relationship. TCW asserts that the facts and arguments in this case are sufficiently interwoven with the prior employment relationship between TCW and Ravich to trigger the clause. Accordingly, TCW argues that Ravich should have filed this claim in New York, not Delaware.[32] Ravich responds that his defamation claim does not arise from his employment relationship with TCW. Ravich asserts that TCW's conduct, in circulating the memorandum, was "wholly outside that contracted for in the employment agreement." Indeed, Ravich argues that his defamation claim "would be completely unchanged" if Ravich had never worked for TCW.[33]

Despite Ravich's attempt to frame his defamation claim as arising outside of and wholly separate from the strictures of the agreements that he entered into with TCW, the Court finds that the Employment Agreement's forum selection clause applies to the instant action. This finding is precisely because Ravich's defamation claim arises from the employment relationship between TCW and Ravich. The facts and allegations in Ravich's claim depend upon the existence of the former employment relationship between them. The essence of Ravich's claim is based on alleged actions by his former employer, TCW, through its chief executive officer, who authored and published an internal memorandum to employees, and the

---

[32] Opening Br.; Reply Br.
[33] Opp'n Br.

transmission of that memorandum by another TCW employee to outside reporters. The subject of this memorandum is the result of a workplace investigation into alleged misconduct by Ravich against his coworker. The incident involved the workplace; it involved alleged inappropriate actions with a work colleague; it instigated an internal employment investigation; and it culminated in a threat of disciplinary action against Ravich by his former employer. Moreover, the reputational injury that Ravich alleges and the relief that he seeks, including damages for lost income, depend on the tainting and dissolution of his employment relationship with TCW.[34]

For purposes of considering the Motion, the Court need not determine whether the defamation claim arises out of the Employment Agreement, but rather the parties' "employment relationship." To be clear, even though Ravich's defamation claim does not necessarily rely on any specific or express provision in the Employment Agreement, the complaint leaves no doubt that the that the claim arises out of his employment relationship with TCW. Because Ravich's defamation claim arises out of this employment relationship, the Employment Agreement's forum selection clause requires that Ravich file his claim in New York, not Delaware.

---

[34] *See* Compl. This Court has considered analogous circumstances. In *Biomeme, Inc. v. McAnallen*, a claim alleging that the defendant interfered with the plaintiff's business opportunities was found to arise from or relate to an employment agreement because the communication at issue in the claim occurred was made to potential customers during the period of employment and formed the basis for the defendant's termination from the company. 2021 WL 5411094, at *3-4 (Del. Super. Nov. 10, 2021).

15

## CONCLUSION

For the foregoing reasons, TCW's motion to dismiss is **GRANTED.** Because dismissal of this action is mandated by Superior Court Civil Rule 12(b)(3), the Court does not reach the parties' arguments based on Rule 12(b)(6).

**IT IS SO ORDERED,** this 30th day of April, 2024.

_____
Sheldon K. Rennie, Judge